## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

ALBERT OGLES,

        *Plaintiff*,

v.

SECURITY BENEFIT LIFE INSURANCE
COMPANY; SECURITY BENEFIT
CORPORATION; GUGGENHEIM
PARTNERS, LLC; ROYAL BANK OF
SCOTLAND plc; AND GUGGENHEIM
INVESTMENTS, A/K/A/ GUGGENHEIM
PARTNERS INVESTMENT
MANAGEMENT, LLC,

        *Defendants*.

Case No.: 2:18-cv-02265-CM-KGG

Oral Argument Requested

## MEMORANDUM IN SUPPORT OF
## GUGGENHEIM PARTNERS' AND GUGGENHEIM INVESTMENTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

FACTUAL ALLEGATIONS ...............................................................................................4

STANDARD OF REVIEW..................................................................................................7

ARGUMENT.......................................................................................................................7

      I.      PLAINTIFF'S RICO CLAIMS ARE BARRED BY THE McCARRAN-FERGUSON ACT AND MUST BE DISMISSED ................................................8

      II.     COUNT II SHOULD BE DISMISSED BECAUSE PLAINTIFF IS NOT AN INTENDED BENEFICIARY OF THE INVESTMENT MANAGEMENT CONTRACT .......................................................................14

            A.      This Court May Appropriately Consider The Investment Management Agreement Without Converting This Motion Into A Summary Judgment Motion....................................................................14

            B.      Plaintiff's Claim For Breach Of Contract Fails Because He Was Not An Intended Third-Party Beneficiary Of The Contract ....................15

      III.    PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT FAILS AS A MATTER OF LAW AND MUST BE DISMISSED ...........................................20

            A.      Plaintiff's Unjust Enrichment Claim Fails Because He Has Not Alleged An Inadequate Remedy At Law ...................................................21

            B.      Plaintiff Cannot Plausibly Allege That He Conferred A Known Benefit On The Guggenheim Defendants, Or That A Benefit Was Unjustly Retained ......................................................................................22

CONCLUSION...................................................................................................................26

# TABLE OF AUTHORITIES

**CASES**

*A.H.A. Gen. Const., Inc. v. Edelman P'ship*,
  737 N.Y.S.2d 85 (App. Div. 2002) ................................................................................... 18

*In re Aftermarket Filters Antitrust Litig.*,
  No. 08-C-4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010)........................................... 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 7

*BancOklahoma Mortgage Corp. v. Capital Title Co.*,
  194 F.3d 1089 (10th Cir. 1999)....................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 7

*Brenner v. Oppenheimer & Co. Inc.*,
  44 P.3d 364 (Kan. 2002).................................................................................................. 16

*Cline v. Peterson*,
  381 P.3d 516, 2016 WL 5867234 (Kan. Ct. App. 2016)............................................ 15, 16

*Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*,
  No. 2:09CV192-MHT, 2011 WL 2893629 (M.D. Ala. July 19, 2011) ............................ 22

*Deeds v. Waddell & Reed Inv. Mgmt. Co.*,
  280 P.3d 786 (Kan. Ct. App. 2012).................................................................................. 21

*Donahue v. Kansas Bd. of Educ.*,
  No. 18-2012, 2018 WL 3055841 (D. Kan. June 20, 2018) ............................................... 4

*Fasse v. Lower Heating & Air Conditioning, Inc.*,
  736 P.2d 930 (Kan. 1987)................................................................................................ 19

*First Nat'l Bancshares of Beloit, Inc. v. Geisel*,
  853 F. Supp. 1337 (D. Kan. 1994) .................................................................................. 18

*Gianelli v. RE/MAX of N.Y., Inc.*,
  41 N.Y.S.3d 273 (App. Div. 2016) .................................................................................. 20

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
  130 F.3d 1381 (10th Cir. 1997)........................................................................................ 15

*Grothe v. Grothe*,
  337 P.3d 72, 2014 WL 5801003 (Kan. Ct. App. 2014).................................................... 21

*Hall v. Associated Int'l Ins. Co.*,
  494 F. App'x 902 (10th Cir. 2012) ............................................................ 15, 17

*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*,
  910 P.2d 839 (Kan. 1996) ............................................................................ 22

*Hudson v. Athene Annuity & Life Co.*,
  No. 416CV00089SMRHCA, 2017 WL 3477745 (S.D. Iowa May 11, 2017) ...................... 11

*Humana Inc. v. Forsyth*,
  525 U.S. 299 (1999) ................................................................................ 8, 12

*Moore v. Climate Corp.*,
  No. 15-4916-DDC-KGS, 2016 WL 4527991 (D. Kan. Aug. 30, 2016) .............................. 20

*Ludwick v. Harbinger Group Inc.*,
  854 F.3d 400 (8th Cir. 2017) ..................................................................*passim*

*Nat'l Mktg. Ass'n v. Broadwing Telecomms., Inc.*,
  No. CIV.A. 02-2017-CM, 2003 WL 1608416 (D. Kan. Mar. 26, 2003) ............................. 14

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
  19 F. Supp. 2d 157 (S.D.N.Y. 1998) ................................................................ 16

*Portofino Seaport Vill., LLC v. Welch*,
  4 So. 3d 1095 (Ala. 2008) ........................................................................... 21

*In re Potash Antitrust Litig.*,
  667 F. Supp. 2d 907 (N.D. Ill. 2009), *vacated on other grounds sub nom.*
  *Minn-Chem, Inc. v. Agrium Inc.*, 657 F.3d 650 (7th Cir. 2011), *reh'g en banc*
  *granted and vacated* (7th Cir. 2011), *and aff'd*, 683 F.3d 845 (7th Cir. 2012) ...................... 24

*Regal Ware, Inc. v. Vita Craft Corp.*,
  653 F. Supp. 2d 1146 (D. Kan. 2006) ............................................................ 22, 23

*Robbins v. Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008) ..................................................................... 19

*Sec. & Exch. Comm'n v. Nat'l Sec., Inc.*,
  393 U.S. 453 (1969) ................................................................................. 12

*Slater v. A.G. Edwards & Sons, Inc.*,
  719 F.3d 1190 (10th Cir. 2013) ...................................................................... 15

*Solutia Inc. v. FMC Corp.*,
  385 F. Supp. 2d 324 (S.D.N.Y. 2005) ............................................................ 16, 17

*Spires v. Hospital Corp. of America*,
  289 F. App'x 269 (10th Cir. 2008) ............................................................. 23, 24

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................. 25

*State ex rel. Stovall v. Reliance Ins. Co.*,
  107 P.3d 1219 (Kan. 2005) ...................................................................... 16, 19

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) ................................................................... 13

*Thompson v. Jiffy Lube Int'l, Inc.*,
  250 F.R.D. 607 (D. Kan. 2008) .................................................................. 21

*Toone v. Wells Fargo Bank, N.A.*,
  716 F.3d 516 (10th Cir. 2013) ............................................................... 11, 14

*Tradesmen, Int'l, Inc. v. U.S. Postal Serv.*,
  234 F. Supp. 2d 1191 (D. Kan. 2002) ......................................................... 17

*Tronsgard v. FBL Fin. Grp., Inc.*,
  No. 17-2393-DDC-JPO, 2018 WL 1942648 (D. Kan. Apr. 25, 2018) ................ 13

*United States v. South-Eastern Underwriters Ass'n*,
  322 U.S. 533 (1944) ..................................................................................... 8

*United States v. United Servs. Auto. Ass'n*,
  968 F.2d 1000 (10th Cir. 1992) ................................................................... 17

*Walsh v. Weber*,
  379 P.3d 1150, 2016 WL 4750102 (Kan. Ct. App. 2016) ................................ 25

*Warnick v. Cooley*,
  895 F.3d 746 (10th Cir. July 9, 2018) ........................................................... 7

## STATUTES, REGULATIONS, AND RULES

15 U.S.C. § 1012(b) ............................................................................... 7, 8, 12

Kan. Stat. Ann. § 40-3306(b)(4) ...................................................................... 11

Federal Rule of Civil Procedure 12(b)(6) ................................................... 1, 4, 11

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Guggenheim Partners LLC ("Guggenheim Partners") and Guggenheim Investments a/k/a Guggenheim Partners Investment Management LLC ("Guggenheim Investments," and, together with Guggenheim Partners, the "Guggenheim Defendants") respectfully submit the following Memorandum in Support of their Motion to Dismiss the Amended Complaint.

## INTRODUCTION

Stripped of conclusory and irrelevant allegations and hyperbolic rhetoric, the core of this matter is quite simple: six years ago, Plaintiff Albert Ogles ("Plaintiff" or "Ogles") purchased an annuity from Defendant Security Benefit Life Insurance Company ("Security Benefit Life" or "SBL") and is now unhappy with its return. He alleges that he learned five years after he bought the annuity that it "failed to produce any significant interest credits" or to otherwise perform consistently with certain representations purportedly contained in marketing materials given to him by his own financial advisor. According to Plaintiff, he purchased his annuity on the basis of certain express and implied representations about (i) Security Benefit Life's financial condition, and (ii) the purported superiority of the annuity he chose to purchase. Plaintiff alleges that these representations were untrue, and that he would not have purchased the annuity if he had known about Security Benefit Life's "true" financial condition and received full disclosure of certain facts.

Plaintiff's narrative begs the question of what the Guggenheim Defendants' role is in this whole matter. The Guggenheim Defendants, after all, did not sell the annuity to Plaintiff. Nor did they market the annuity to Plaintiff. Nor did they select or partner with the firms or advisors that *did* market and sell the annuity to Plaintiff. The Guggenheim Defendants made no guarantees or representations regarding the annuity to Plaintiff. In fact, the Guggenheim Defendants are not alleged to have *ever* communicated directly or even indirectly with Plaintiff.

The Guggenheim Defendants did not receive any payments from Plaintiff, and never entered into a contract with Plaintiff.   Nor are the Guggenheim Defendants alleged to have issued, administered, or managed the SBL annuities.   In fact, the most that is alleged about the role of the Guggenheim Defendants in any damage purportedly suffered by Plaintiff is that (i) Guggenheim Partners is part of the investor group that purchased Security Benefit Life in 2010 and (ii) Guggenheim Investments manages Security Benefit Life's general account.   In other words, this is a case centered on the marketing and selling of an annuity to Plaintiff.   The Guggenheim Defendants played no role in that activity.

Thus, Plaintiff creates a sideshow, resorting to overzealous claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act in an attempt to connect the Guggenheim Defendants to his complained-of conduct and his illusory "losses."   He spends pages upon pages listing vague unsubstantiated schemes and padding his Amended Complaint with conclusory allegations of intricate accounting machinations and supposedly risky ventures.   All of these inflammatory allegations are false, but ultimately, they are irrelevant.   The allegations against the Guggenheim Defendants have no connection whatsoever to this Plaintiff or to the representations that drove Plaintiff to purchase the annuity at issue, or even to the performance of the annuity.

And, ultimately, such brazen allegations cannot change the fact that Plaintiff has failed to allege a cognizable claim against the Guggenheim Defendants.   Among other defects, as described more fully below, Plaintiff's RICO claims in Counts IV and V of the Amended Complaint would require this Court to second-guess and then reject numerous regulator-approved reinsurance transactions, regulator-approved payments of dividends, and the status of Security Benefit Life's financial solvency—all matters that fall squarely within the control of state insurance regulators.   Accordingly, Plaintiff's RICO claims are preempted under the

McCarran-Ferguson Act, which precludes any federal statute from operating to "invalidate, impair, or supersede" any state law regulating the business of insurance.

Plaintiff's state law claims against the Guggenheim Defendants in Counts II and III fare no better.  In Count II, Plaintiff purports to bring a claim for breach of the investment management contract between Guggenheim Investments and Security Benefit Life.  Plaintiff is not a party to that contract, but claims to be an "intended beneficiary" of it.  In support of this claim, Plaintiff points to two sentences from certain marketing materials that he argues establish that the contract between Guggenheim Investments and Security Benefit Life was intended to benefit him.  It does not.  And, significantly, Plaintiff points to no *contractual* language evidencing an intent to benefit him by the contracting parties.  Nor could he.  The actual contract on which Plaintiff relies makes clear that it is only intended to benefit the parties to it, a fact that dooms Plaintiff's claim as a matter of law.

Finally, in Count III, Plaintiff asserts a claim for unjust enrichment against Guggenheim Partners.  This claim also fails as a matter of law.  First, Plaintiff is not entitled to equitable relief because he has an adequate remedy at law.  Second, Plaintiff has not alleged (and cannot allege) a plausible claim for unjust enrichment.  His conclusory allegation that he "conferred benefits" on Guggenheim Partners is based on an implausible—and, at best, an impermissibly indirect and attenuated—claim that fails as a matter of law.  Moreover, Plaintiff cannot plausibly claim that any alleged benefit conferred upon Guggenheim Partners has been "unjustly retained," since Plaintiff has been or will be repaid the entirety of his purchase payment by operation of the annuity contract.  For these reasons, Count III must be dismissed as well.

## FACTUAL ALLEGATIONS[1]

Six years ago, in 2012, Plaintiff decided to buy an SBL annuity known as the "Total Value Annuity" (or "TVA") from his personal financial advisor.  Am. Compl. ¶ 139; *see id.* ¶¶ 65–66.  The Guggenheim Defendants were not parties to the annuity contract, and Plaintiff never alleges that he paid any money to the Guggenheim Defendants in connection with this purchase or otherwise.  Although he had other allocation choices, Plaintiff decided to allocate 100% of his purchase payment of about $145,000 to a "5 Year Annuity Linked TVI Index Account."  *Id.* ¶ 139.  According to the Amended Complaint, Security Benefit Life (and not the Guggenheim Defendants) "issued, administered and managed its annuities."  *Id.* ¶ 13.  While Plaintiff does not claim that he lost money, he asserts that, after the "five-year anniversary" of his purchase, he "learned" that his TVA had not earned "any significant interest credits."  *Id.* ¶ 142.  A year after that, Plaintiff filed this lawsuit.

According to Plaintiff, Security Benefit Life partnered with four marketing organizations to exclusively offer the TVA.  *See id.* ¶¶ 18–21.  There is no allegation that the Guggenheim Defendants were involved with that decision, had any involvement with the training of the marketing organizations, or otherwise marketed and/or offered the TVA or any other SBL annuity.  *See id.* ¶¶ 59–66.  Plaintiff alleges that these marketing organizations, including the one that provided training and marketing materials to the advisor who sold Plaintiff his annuity, made purportedly false representations and/or made certain material omissions regarding the

---

[1] The factual allegations in this section come from Plaintiff's Amended Complaint.  The Guggenheim Defendants do not admit to the factual allegations recited here but, unless otherwise noted, assume the truth of Plaintiff's well-pleaded factual allegations solely for purposes of moving to dismiss under Rule 12(b)(6).  *See Donahue v. Kansas Bd. of Educ.*, No. 18-2012, 2018 WL 3055841, at *2 (D. Kan. June 20, 2018) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." (citations omitted)).

upside potential of the TVA and SBL's financial strength. *See, e.g.*, *id.* ¶¶ 52, 67, 129, 140–42. Plaintiff alleges that he purchased his annuity on the basis of these representations, and would not have purchased the TVA if he had knowledge of "Security Benefit's true financial condition and had he received full disclosure of" certain allegedly material facts. *See id.* ¶¶ 140, 142.

There is no allegation that the Guggenheim Defendants made any guarantee or representation to Plaintiff. In fact, Plaintiff does not allege the existence of a single direct or indirect communication with the Guggenheim Defendants. And, notably, while Plaintiff has alleged that certain disclosures regarding the TVA should have been made to potential purchasers, he points to no laws or regulations requiring the disclosures allegedly missing in this case, let alone that the Guggenheim Defendants—parties that had no contact of any kind with Plaintiff—had any sort of obligation to make such a disclosure.

As alleged by Plaintiff, the Guggenheim Defendants' connection to this matter is speculative, indirect, and attenuated at best. Eight years ago, in July 2010, Security Benefit Life and Security Benefit Corporation ("SBC," and, together with Security Benefit Life, the "Security Benefit Defendants"), the parent company of Security Benefit Life, were purchased by an investor group that included Guggenheim Partners. *See id.* ¶ 38. Plaintiff asserts that those entities then "employed a deceptive and fraudulent accounting strategy to make Security Benefit Life appear financially stronger than it really was." *Id.* ¶ 40. According to Plaintiff, this allegedly involved a number of reinsurance transactions that effectively shifted liabilities from the books of Security Benefit Life to the books of "secret affiliated entities." *Id.* ¶ 75; *see also id.* ¶ 40. Plaintiff alleges that Guggenheim Partners, SBC, and Security Benefit Life (i) misrepresented Security Benefit Life's surplus, (ii) falsely claimed credits for liabilities that Security Benefit Life was not entitled to claim, and (iii) misstated and concealed a substantial

debt load.  *Id.* ¶ 40.  Plaintiff also alleges that Guggenheim Partners "extracted dividends" and "exorbitant management fees and investment fees" from Security Benefit Life, and "extracted cash" from Security Benefit Life to fund the "perverse" and "speculative" purchase of the Los Angeles Dodgers.  *Id.* ¶¶ 41, 86.

Apart from the inflammatory and unsubstantiated nature of these allegations, Plaintiff has not alleged that any of these activities left Security Benefit Life unable to fulfill its obligations to its annuity holders.  Nor does Plaintiff mention that all of these allegations (including the reinsurance transactions, the financial solvency of Security Benefit Life, and the payment of certain dividends) relate to Security Benefit Life's compliance with Kansas state insurance law, an area that is highly regulated by, and falls squarely within the expertise of, the Kansas Insurance Department.

Finally, the Amended Complaint is especially lacking when it comes to Guggenheim Investments, which is mentioned only a handful of times in the 181-paragraph Amended Complaint.  Indeed, Guggenheim Investments' alleged role relates solely to its purported mismanagement of the "general account" of Security Benefit Life pursuant to a contract to which Plaintiff admits he was not a party.  *Id.* ¶ 158.

Based on these speculative and disparate allegations, Plaintiff has asserted a "kitchen sink" complaint, bringing five claims against five different Defendants in which he argues that they have injured him by failing to ensure that he earned an appropriate return on his investment.  *Id.* ¶ 94.  In Count I, Plaintiff claims that Security Benefit Life breached its annuity contract with Plaintiff.  *Id.* ¶¶ 151–56.  In Count II, Plaintiff asserts that Guggenheim Investments breached its contract with Security Benefit Life for the management of Security Benefit Life's general account.  *Id.* ¶¶ 157–61.  In Count III, Plaintiff brings a claim for unjust enrichment against

Guggenheim Partners and Royal Bank of Scotland plc ("RBS").  *Id.* ¶¶ 162–67.  In Counts IV and V, Plaintiff claims that Defendants violated and conspired to violate RICO, 18 U.S.C. § 1962(c), (d).  *Id.* ¶¶ 168–78.  For the reasons discussed below, the claims against Guggenheim Partners and Guggenheim Investments should be dismissed.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the court must view the plaintiff's well-pleaded allegations as true, and view them in the light most favorable to the plaintiff, the allegations "must be *well-pleaded* allegations."  *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (emphasis in original).  It is not enough to provide "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  And the court need not accept as true those allegations that only state legal conclusions.  *Iqbal*, 556 U.S. at 679–80.  "If, in the end, a plaintiff's 'well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' the complaint fails to state a claim."  *Warnick*, 895 F.3d at 751 (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

For the reasons discussed below, Plaintiff's claims against the Guggenheim Defendants are legally deficient, and the Amended Complaint should be dismissed with prejudice in its entirety.[2]

---

[2] The Guggenheim Defendants expressly incorporate herein and join fully the arguments made in the motions to dismiss filed by the Security Benefit Defendants and by RBS.

I.   **PLAINTIFF'S RICO CLAIMS ARE BARRED BY THE McCARRAN-FERGUSON ACT AND MUST BE DISMISSED.**

Plaintiff's RICO claims in Counts IV and V are legally impermissible because application of RICO to the conduct alleged by Plaintiff is barred by the McCarran-Ferguson Act, 15 U.S.C. § 1012(b).  Specifically, where, as here, allowing a RICO claim based on conduct that was reviewed and approved by state regulatory bodies to proceed would "impair" and disrupt the regulation of state insurance law, such a result is prohibited by the McCarran-Ferguson Act.  Thus, Plaintiff's RICO claims against all Defendants, including the Guggenheim Defendants, should be dismissed.

The business of insurance has traditionally fallen within the domain of the states, immune from federal regulation.  *Humana Inc. v. Forsyth*, 525 U.S. 299, 715–16 (1999).  In 1944, the Supreme Court held for the first time that an insurance company doing business across state lines could be subject to federal laws.  *Id.* at 716 (referring to *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533 (1944)).  Concerned that the Court's decision might undermine state efforts to regulate insurance, Congress promptly enacted the McCarran-Ferguson Act, *id.*, which expressly provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, . . . unless such Act specifically relates to the business of insurance."  15 U.S.C. § 1012(b).

Thus, under the McCarran-Ferguson Act, a state law that is enacted "for the purpose of regulating the business of insurance" preempts any federal statute that (i) does not "specifically relat[e] to the business of insurance" and (ii) would "invalidate, impair, or supersede" the state law.  *Humana*, 525 U.S. at 307 (citing 15 U.S.C. § 1012(b)).  The first of these prongs is easily met here.  The Supreme Court has long held that "RICO is not a law that specifically relates to

the business of insurance." *Id.* Thus, the only relevant question is that presented in the second prong: Would RICO's application to Plaintiff's claims "invalidate, impair, or supersede" state laws regulating insurance? The answer here is indisputably yes.

In *Ludwick v. Harbinger Group Inc.*, the Eighth Circuit addressed this precise issue under nearly identical factual circumstances, and found that the plaintiff's RICO claims were preempted by the insurance laws of Iowa, Maryland, and Mississippi. 854 F.3d 400, 407 (8th Cir. 2017). Like here, the plaintiff in *Ludwick* purchased an annuity from a life insurance company, F&G, and later initiated a RICO action against F&G as well as the hedge fund that owned F&G and two of F&G's subsidiaries, claiming they "fraudulently dup[ed]" her into purchasing the annuity. *Id.* at 402, 404. Like here, the crux of the plaintiff's complaint was that F&G distributed reports and other marketing materials that misrepresented its financial strength by not properly reflecting "sham" transactions undertaken for the purpose of inflating its assets and surplus. *Id.* at 402. On the basis of F&G's apparent good health, the plaintiff bought an F&G annuity. *Id.* After becoming convinced F&G was not in good financial shape and that her annuity was not worth what she had paid, the plaintiff brought suit. *Id.* at 402–03.

Focusing on the precise claims asserted—which arose out of the alleged misrepresentation of F&G's "true financial condition"—the court recognized that resolving the claims "would necessarily involve deciding whether the supposed sham transactions left F&G in the healthy financial position it reported." *Id.* at 404. These questions about F&G's solvency fell "squarely within the regulatory oversight by state insurance departments." *Id.* Specifically, reinsurance transactions in Iowa, Maryland, and Mississippi required approval by state insurance regulators, meaning that a court could not resolve the plaintiff's claims "without holding, more or less explicitly, that state insurance regulators were wrong to let the transactions proceed." *Id.*

Such "second-guessing [of the] state regulators' oversight of F&G" would interfere with the administration of the states' insurance laws, a result barred by the McCarran-Ferguson Act.  *Id.* at 405.  The court accordingly held that the plaintiff's RICO claims were barred under the McCarran-Ferguson Act.  *Id.* at 407.

The same result should apply here.  Plaintiff's RICO claims arise from the alleged misrepresentation of Security Benefit Life's "true financial condition."  *See, e.g.*, Am. Compl. ¶¶ 88, 90, 142, 166; *see also id.* ¶¶ 40–41.  Plaintiff claims that Defendants "fraudulently duped" him, *id.* ¶ 90, using a strategy that involved "a number of reinsurance transactions that had the effect of shifting liabilities off Security Benefit Life's books while appearing to bolster the company's assets."  *Id.* ¶ 40; *see also id.* ¶¶ 75, 114, 119.  In so doing, Plaintiff alleges that Security Benefit Life maintained the false appearance of financial strength and stability.  *Id.* ¶ 40.

Consequently, just as in *Ludwick*, a determination of Plaintiff's RICO claims would inevitably "impair" state insurance regulation.  As described more fully in the Security Benefit Defendants' Motion to Dismiss, the insurance laws of Kansas provide for a comprehensive regulatory scheme through which the Kansas Insurance Department has the power to monitor, assess, and regulate Security Benefit Life's financial strength and solvency.  The Kansas Insurance Department requires certain detailed reports regarding SBL's capital and surplus, and the commissioner has statutory authority to take remedial actions in the event that an insurer's capital and surplus levels are inadequate.  And, significantly, the insurance laws of Kansas require regulatory approval from the Kansas Insurance Department for reinsurance transactions and all dividend payments.  *See* Security Benefit Defs.' Mot. to Dismiss at 8–9, 24–26.[3]

---

[3] The insurance laws of Alabama, where Plaintiff purchased his TVA, provide for a similarly comprehensive regulatory scheme.  *See* Security Benefit Defs.' Mot. to Dismiss at 25–26.

Moreover, under its 2010 Amended and Restated Investment Management Agreement (the "Investment Management Agreement") with Security Benefit Life, [4] Guggenheim Investments was required to obtain pre-approval from the Kansas Insurance Department of any investment of the SBL account it manages from which it will obtain a management fee, and any investment of that SBL account must comply with the Kansas Insurance Code.  *See* Security Benefit Defs.' Mot. for Judicial Notice ("MJN"), Ex. C at § 1(d) and Ex. III, ECF No. 35-3, *submitted under seal*, ECF No. 36-1.[5]  Notably, the Investment Management Agreement itself had to be (and was) approved by the Kansas Insurance Department.  *See* Kan. Stat. Ann. § 40-3306(b)(4) (precluding insurance companies from entering into any management agreement if the commissioner of insurance disapproves).

Accordingly, as in *Ludwick*, resolving Plaintiff's RICO claims would necessarily require this Court to "second-guess[] state regulators' oversight of" the Defendants.  *Ludwick*, 854 F.3d at 404.  "[S]uch review is just the sort of case-specific intrusion and interference [that] the McCarran-Ferguson Act forbids."  *Id.* at 405.  Plaintiff's RICO claims are therefore preempted by state law and must be dismissed in their entirety.  *See Hudson v. Athene Annuity & Life Co.*, No. 416CV00089SMRHCA, 2017 WL 3477745 (S.D. Iowa May 11, 2017) (relying on *Ludwick*

---

[4] The Investment Management Agreement sets out Guggenheim Investments' duties and obligations in managing the investment and reinvestment of certain investment assets of Security Benefit Life.  As discussed more fully in Section II.A, *infra*¸ the court may consider the terms of the Investment Management Agreement in deciding this motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) ("Courts are permitted to review 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'").

[5] The Guggenheim Defendants join in the Motion for Judicial Notice filed by the Security Benefit Defendants.

to dismiss RICO claims premised on allegations that the insurer-defendant misrepresented, among other things, its financial strength as reverse preempted by state insurance laws).[6]

This is true despite the fact that the Guggenheim Defendants themselves are not insurance companies (although, as explained above, Guggenheim Investments was required to obtain the approval of the Kansas Insurance Department before making certain investments). There is no requirement that a captioned party be regulated by the insurance commissioner for the McCarran-Ferguson Act to apply. The plain language of the Act "refers not to the persons or companies who are subject to state regulation, but to laws 'regulating the business of insurance.'" *Sec. & Exch. Comm'n v. Nat'l Sec., Inc.*, 393 U.S. 453, 459 (1969) (quoting 15 U.S.C. § 1012(b)). The proper inquiry is whether the underlying challenged *conduct* is governed by insurance law, and whether application of federal law to such conduct would frustrate or interfere with a state's regulatory regime. *See Humana*, 525 U.S. at 308 (stating that "[t]he key question . . . is whether RICO's application to the scheme in which . . . defendants are alleged to have collaborated" would invalidate, impair, or supersede state insurance laws). The McCarran-

---

[6] The Tenth Circuit has not considered a case that is factually and legally similar to this one. The Guggenheim Defendants anticipate that Plaintiff will cite *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089 (10th Cir. 1999), but that case provides little guidance and is readily distinguishable. There, a residential mortgage loan purchaser challenged allegedly false representations of a title company that it would serve as a settlement agent. *Id.* at 1099. Following a discussion of the McCarran-Ferguson Act and the then recently-decided *Humana* case, the Tenth Circuit allowed plaintiff's RICO claims to go forward (before ultimately affirming summary judgment in defendants' favor), concluding without elaboration that "RICO 'advances' Missouri's 'interest in combating insurance fraud' and 'does not frustrate any articulated [Missouri] policy.'" *Id.* But that case involved only settlement and closing services, which the plaintiff itself contended were not "the business of insurance." *Id.* at 1098. By contrast, the present case involves closely-regulated insurance transactions and insurance regulators' monitoring of an insurer's financial condition. As in *Ludwick*, the application of RICO to this case would frustrate and impair the ability of Kansas to regulate the business of insurance. *See Ludwick*, 854 F.3d at 405.

Ferguson Act is "concerned with the practical effect of federal law on state insurance regulation, regardless of whom it targets as a technical legal matter." *Ludwick*, 854 F.3d at 405.

Accordingly, in *Ludwick*, the court of appeals upheld the district court's dismissal of RICO claims not only against the annuity issuer, F&G, but also against its hedge fund owner, Harbinger Group, Inc., and two of its subsidiaries, Raven Reinsurance Company and Front Street Re (Cayman), Ltd. *Id.* The same conclusion is warranted here. After all, as in *Ludwick*, litigating claims premised on Security Benefit Life's alleged conduct and financial condition against the Guggenheim Defendants "would be no less disruptive of state insurance regulation" than a lawsuit against Security Benefit Life alone. *Id.*

This interpretation accords with common sense: limiting the application of the McCarran-Ferguson Act to insurance company defendants would enable private plaintiffs to encroach on the province of state insurance regulators by asserting their claims only against counterparties to transactions with insurers, frustrating the purpose of the Act. Where, as here, the claims at issue would impair the state regulatory regime, the McCarran-Ferguson Act preempts Plaintiff's RICO claims against *all* Defendants alleged to have participated in the challenged conduct. Accordingly, this Court should dismiss Counts IV and V of the Amended Complaint with prejudice.[7]

_____

[7] Because Count IV of Plaintiff's Amended Complaint fails to state a viable claim, his conspiracy claim under Count V likewise fails. *See Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) ("If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law."); *Tronsgard v. FBL Fin. Grp., Inc.*, No. 17-2393-DDC-JPO, 2018 WL 1942648, at *3 n.3 (D. Kan. Apr. 25, 2018) ("Because plaintiffs' Complaint fails to state a plausible RICO claim under § 1962(c), it also fails to state a RICO conspiracy claim under § 1962(d).").

II.   **COUNT II SHOULD BE DISMISSED BECAUSE PLAINTIFF IS NOT AN INTENDED BENEFICIARY OF THE INVESTMENT MANAGEMENT CONTRACT.**

A close review of the 181-paragraph Amended Complaint makes clear that the sole reason Guggenheim Investments is named in this matter is due to its management of the investment and reinvestment of certain SBL accounts pursuant to the 2010 Investment Management Agreement between Guggenheim Investments and Security Benefit Life. In the entirety of the Amended Complaint prior to Count II, Guggenheim Investments is named in only *eight* factual allegations—and of those, seven are generalized, conclusory allegations brought against all or most Defendants. *See* Am. Compl. ¶¶ 55, 110–11, 114, 129, 143, 158, 160. And, in accordance with Plaintiff's breach of contract theory in Count II, the *sole* factual allegation singling out Guggenheim Investments relates to certain marketing materials that state that Guggenheim Investments helped Security Benefit Life "set competitive credited rates for [its] annuity products." *Id.* ¶ 55. This allegation is repeated in Count II itself. *See id.* ¶ 158.

Based on these thin allegations, Plaintiff attempts to assert a breach of contract claim against Guggenheim Investments, arguing that he is an intended beneficiary of the Investment Management Agreement. *See id.* The Investment Management Agreement on which Plaintiff relies makes clear that he is not and cannot be an intended beneficiary. Consequently, Plaintiff fails to state a claim and Count II should be dismissed with prejudice.

A.   **This Court May Appropriately Consider The Investment Management Agreement Without Converting This Motion Into A Summary Judgment Motion.**

In evaluating the sufficiency of a complaint, the Court must ordinarily limit its review to the complaint itself, but "[c]ourts are permitted to review 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Toone*, 716 F.3d at 521; *see also Nat'l Mktg. Ass'n v. Broadwing Telecomms.*,

14

*Inc.*, No. CIV.A. 02-2017-CM, 2003 WL 1608416, at *1 (D. Kan. Mar. 26, 2003) ("If a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997))).  After all, "[i]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."  *GFF Corp.*, 130 F.3d at 1385.  Where such documents conflict with the allegations in the complaint, "[the court] need not accept those allegations as true."  *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013).

Here, the Investment Management Agreement is not only central to Plaintiff's claim, it is the entire basis for his claim.  *See* Am. Compl. ¶ 158 ("[A] contract existed between Security Benefit Life and Guggenheim Investments for the management of Security Benefit Life's general account.  The Plaintiff and each putative Class member were intended beneficiaries of the contract . . . .").  Consequently, the Investment Management Agreement may be appropriately considered by the Court without converting this motion to dismiss into one for summary judgment.[8]

### B.   Plaintiff's Claim For Breach Of Contract Fails Because He Was Not An Intended Third-Party Beneficiary Of The Contract.

It is black-letter law that only a party to a contract or an intended third-party beneficiary has standing to sue for breach of contract.  *See, e.g.*, *Hall v. Associated Int'l Ins. Co.*, 494 F.

---

[8] The 2010 Investment Management Agreement and a subsequent 2014 Investment Management Agreement are submitted under seal as Exhibits C and D, respectively, to the Security Benefit Defendants' Unopposed Motion for Leave to File Under Seal.  ECF Nos. 36-1, 36-2.  They are also included in the MJN.  *See* ECF Nos. 35-3, 35-4.

App'x 902, 905 (10th Cir. 2012); *Cline v. Peterson*, 381 P.3d 516, 2016 WL 5867234, at *3 (Kan. Ct. App. 2016).   Here, the unambiguous language of the Investment Management Agreement under which Plaintiff purports to sue makes clear that he does not—and could never—have a cognizable claim for breach of contract against Guggenheim Investments.

Plaintiff claims that he and the other putative class members were "intended beneficiaries of the contract" between Security Benefit Life and Guggenheim Investments.   Am. Compl. ¶ 158.   To qualify as an intended beneficiary, however, a third party must present evidence that the contract was "expressly made" for his benefit.   *See State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1230–31 (Kan. 2005).   This requires more than simply showing that the agreement could (or even would) benefit the third party—even if the contracting parties *know* that the contract will benefit the third party.   *Id.* at 1232; *see also Cline*, 2016 WL 5867234, at *4 ("Simply knowing that a third party will or could benefit from the contract is not enough: 'Knowledge that a contract will benefit a third party is not *intent* to benefit the third party.'" (emphasis in original)).   Instead, "the contract must be made for the third party's benefit as its object, and [the third party] must be intended to be benefitted in order to be entitled to sue upon it." *Stovall*, 107 P.3d at 1231.   This is because "[c]ontracting parties are presumed to act for themselves and therefore an intent to benefit a third person *must be clearly expressed* in the contract." *Id.* (emphasis added); *see also Cline*, 2016 WL 5867234, at *4 (explaining that, under Kansas law, the intent to benefit a third party must be "clearly expressed in the contract").[9]

---

[9] While the Investment Management Agreement is "governed by and construed in accordance with the law of the State of New York," *see* MJN, Ex. C at ¶ 17, "if the outcome of this dispute would be the same under the laws of New York as under the laws of Kansas, the case presents a 'false conflict.'" *Brenner v. Oppenheimer & Co. Inc.*, 44 P.3d 364, 372 (Kan. 2002) (citations omitted).   Here, there is no conflict.   New York and Kansas both follow the Restatement when analyzing issues relating to third-party beneficiaries, and (unsurprisingly) the law is substantially

Moreover, under Kansas law, "[b]efore reaching the issue of whether a third-party may directly enforce a contract from which it would benefit, the third-party must show the existence of a provision in the contract that operates to its benefit." *United States v. United Servs. Auto. Ass'n*, 968 F.2d 1000, 1002 (10th Cir. 1992); *see also Hall*, 494 F. App'x at 905 (affirming dismissal of third-party beneficiary claim where plaintiff "could not point to any provision in the insurance policy that operated to his benefit"); *Tradesmen, Int'l, Inc. v. U.S. Postal Serv.*, 234 F. Supp. 2d 1191, 1202 (D. Kan. 2002) ("[U]ntil a third party identifies a specific contractual provision operating to its benefit, the court may not reach the issue of whether a third party may directly enforce a contract from which it could benefit.").

Here, Plaintiff's claim fails at the threshold, as he does not allege any provision in the Investment Management Agreement that operated to his benefit.  Nor could he ever allege the existence of such a provision.  The unambiguous terms of the Investment Management Agreement make clear that there was no such "clearly expressed" intent to benefit Plaintiff or any other third party.  Instead, the Agreement clearly and unambiguously provides, "The Advisor [*i.e.*, Guggenheim Investments] shall discharge its duties hereunder with respect to the Investment Assets *solely in the interest of, and for the exclusive purpose of, benefiting the Company [i.e. Security Benefit Life].*"  MJN, Ex. C at § 4(a) (emphasis added).  Such a provision unequivocally supports Security Benefit Life's entire purpose for entering into the Agreement,

---

the same, *i.e.*, only an "intended" beneficiary has standing to enforce a contract.  *See Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 162 (S.D.N.Y. 1998) ("Under New York law, only an intended beneficiary of a contract may assert a claim as a third-party beneficiary.  A third party is an intended beneficiary where either (1) 'no one other than the third party can recover if the promisor breaches the contract' or (2) 'the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party.'" (citations omitted)); *see also Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 337 (S.D.N.Y. 2005) ("[M]ere intent to confer third-party rights is insufficient; there must be a benefit that is explicit and direct.").

namely, "to engage the Advisor [*i.e.*, Guggenheim Investments] to manage the investment and reinvestment of the Investment Assets" (which are defined as Security Benefit Life's investment accounts).  *See id.* at 1.  It is also in accordance with other provisions in the Agreement.  For example, the Agreement makes clear that "[a]ll transactions authorized by this Agreement for the Investment Accounts shall be made *on behalf of and at the risk of the Company.*"  *Id.* § 2(a) (emphasis added).  Accordingly, the Agreement solely "binds and inures to the benefit of its parties, their successors and assigns." *Id.* § 15.  In fact, the Agreement itself contains no mention of the TVA, any other SBL annuity, or any other product offered by Security Benefit Life to consumers.[10]

In short, there is nothing in the Agreement that could even arguably be construed as "clearly expressing" an intent to benefit *any* third party at all, let alone Albert Ogles or any other annuity purchaser specifically.  Rather, the unequivocal language of the Agreement makes clear that Guggenheim Investments' performance under the contract is "solely for the interest of" Security Benefit Life, and forecloses any claim that Plaintiff was an intended third-party beneficiary of the Agreement.  *See, e.g.*, *First Nat'l Bancshares of Beloit, Inc. v. Geisel*, 853 F. Supp. 1337, 1341 (D. Kan. 1994) (holding that the plaintiffs were not intended beneficiaries of a contract where the "option agreements include a provision clearly indicating that the option is personal to the holding company"); *A.H.A. Gen. Const., Inc. v. Edelman P'ship*, 737 N.Y.S.2d 85, 87 (App. Div. 2002) (holding that the plaintiffs had no standing to assert a claim as a third-

---

[10] The 2014 Investment Management Agreement contains the same unequivocal language that Guggenheim Investments' performance under the contract is "solely in the interest of, and for the exclusive purpose of, benefiting [Security Benefit Life]."  *See* MJN, Ex. D at § 4(a), ECF No. 35-4 *submitted under seal*, ECF No. 36-2; *see also id.* at §§ 2(a), 15.

party beneficiary where the operative contract "expressly provided that it was for the sole and exclusive benefit of the named parties").

In light of this unambiguous contractual language, and the lack of any contractual language that supports Plaintiff's position, his attempt to rely on the "marketing materials" cited at paragraph 158 of the Amended Complaint, or any other alleged representations or extrinsic evidence, must fail. *See Fasse v. Lower Heating & Air Conditioning, Inc.*, 736 P.2d 930, 933 (Kan. 1987) ("The intention of the parties and the meaning of the contract are to be determined from the instrument itself where the terms are plain and unambiguous."). However, even if the Court were to consider Plaintiff's extra-contractual assertions, they still fall far short of establishing that Plaintiff can plausibly be considered an intended beneficiary of the Agreement.

Plaintiff's entire argument relies on a single two-sentence passage from unidentified "marketing materials":

> Guggenheim Investments, a subsidiary of Guggenheim Partners, manages Security Benefit Life's general account assets of more than $10 billion. The firm's expertise helps us set competitive credited rates for our annuity products.

Am. Compl. ¶ 158.[11]  Plaintiff asks the Court to infer from these two sentences that Guggenheim Investments entered into a contract to manage Security Benefit Life's general account for the express purpose of benefiting *him*, in his role as a purchaser of a specific insurance product. There is, however, nothing in this passage allowing for such an inference, and such mere speculation cannot form the basis of a plausible claim. *See, e.g.*, *Robbins v. Oklahoma*, 519 F.3d

_____

[11] Notably, Plaintiff concedes that neither Guggenheim Investments nor Guggenheim Partners had any role in providing these "marketing materials" to him. *See, e.g.*, Am. Compl. ¶ 129 (alleging that marketing materials were transmitted "from Security Benefit Life to the [independent marketing organizations], including Creative Marketing, who in turn delivered and transmitted the training and marketing materials to individual producers, including the advisor who sold the Total Value Annuities to the Plaintiff").

1242, 1247 (10th Cir. 2008) ("The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.").  Rather, at most, this passage is a statement that Security Benefit Life contracted with Guggenheim Investments with the intent to "help" *Security Benefit Life*.  Plaintiff thus fails to meet the requirement that the third party "must be intended to be benefitted," *Stovall*, 107 P.3d at 1231, warranting dismissal with prejudice.

Finally, even if Plaintiff were an intended beneficiary of the agreement between Security Benefit Life and Guggenheim Investments (which plainly he was not), his breach of contract claim would still fail.  A viable breach of contract claim requires "specific identification of the contractual provisions that allegedly support the claim."  *Moore v. Climate Corp.*, No. 15-4916-DDC-KGS, 2016 WL 4527991, at *6 (D. Kan. Aug. 30, 2016); *see also Gianelli v. RE/MAX of N.Y., Inc.*, 41 N.Y.S.3d 273, 273 (App. Div. 2016) ("A breach of contract cause of action fails as a matter of law in the absence of any showing that a specific provision of the contract was breached.").  Here, Plaintiff does not identify a single contractual provision that was breached by Guggenheim Investments, nor could he.  For all of these reasons, Count II should be dismissed with prejudice.

## III.  PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT FAILS AS A MATTER OF LAW AND MUST BE DISMISSED.

Plaintiff's claim for unjust enrichment (Count III) also fails.  First, he does not and cannot plausibly allege that he has no adequate remedy at law, and thus he is not entitled to equitable relief.  Second, he does not and cannot plausibly allege the elements of the claim against Guggenheim Partners, namely that (i) he conferred a benefit upon Guggenheim Partners

and (ii) Guggenheim Partners then inequitably retained such benefit.[12]   For these reasons, Plaintiff's unjust enrichment claim should be dismissed.

### A.   Plaintiff's Unjust Enrichment Claim Fails Because He Has Not Alleged An Inadequate Remedy At Law.

"A claim for unjust enrichment is an equitable claim, and generally an equitable remedy is not available when an adequate remedy exists under another legal claim." *Deeds v. Waddell & Reed Inv. Mgmt. Co.*, 280 P.3d 786, 795 (Kan. Ct. App. 2012).[13]   Far from alleging that his injury cannot be remedied at law, Plaintiff asserts the opposite: that he has "been directly or proximately damaged by [the alleged] breaches and ha[s] suffered financial losses as a result." Am. Compl. ¶ 167.   In fact, throughout the Amended Complaint, Plaintiff alleges that he has suffered compensable monetary damages.   For example, in paragraph 89 alone, Plaintiff expressly alleges no less than four separate times that he suffered "concrete damages" or a "measurable financial loss." *Id.* ¶ 89.   Because Plaintiff has not alleged, and cannot allege, that

---

[12] Plaintiff asserts his claim for unjust enrichment specifically against "Guggenheim and its related entities," along with RBS. *See, e.g.*, Am. Compl. ¶ 164.   "Guggenheim" refers to Guggenheim Partners. *See id.* ¶ 1. There is no specific mention of Guggenheim Investments in Count III.   Regardless, even if Plaintiff intended to bring this claim against Guggenheim Investments as well, it should be dismissed for the same reasons.

[13] As a general matter, "Kansas courts apply the law of the place the suit was filed to unjust-enrichment issues." *Grothe v. Grothe*, 337 P.3d 72, 2014 WL 5801003, at *6 (Kan. Ct. App. 2014).   Under either Kansas law or Alabama law (where Plaintiff is domiciled and where he purchased his TVA), the standards for unjust enrichment are substantially similar. *See Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008) ("To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation.").   However, in the context of a putative nationwide class action, the differences in the 50 states' common laws would be one of many reasons why certification of a class on unjust enrichment claims would likely be precluded. *See Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 625–26 (D. Kan. 2008) ("[T]here are differences nationwide in the very definition of unjust enrichment and its availability as a remedy . . . .   Because of such variations, federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment." (citations omitted)).

he does not have an adequate remedy at law for his alleged injuries, his equitable claim of unjust enrichment should be dismissed.[14]

### B. Plaintiff Cannot Plausibly Allege That He Conferred A Known Benefit On The Guggenheim Defendants, Or That A Benefit Was Unjustly Retained.

A viable claim for unjust enrichment requires allegations establishing, among other things, (1) "a benefit conferred upon the defendant by the plaintiff;" (2) "an appreciation or knowledge of the benefit by the defendant;" and (3) "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 847 (Kan. 1996); *see also Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1151 (D. Kan. 2006). Plaintiff has failed to plausibly allege any of these things.

First, the crux of Plaintiff's unjust enrichment claim is that he "conferred benefits on Guggenheim [Partners] . . . by providing purchase payments to Security Benefit Life" for his annuity contract. *See* Am. Compl. ¶ 164. As noted, a plausible claim for unjust enrichment requires a benefit conferred upon the relevant defendant by the plaintiff. *See Regal Ware*, 653 F. Supp. 2d at 1151–52 (dismissing a claim for unjust enrichment where there were no factual allegations that the parent company—as opposed to the subsidiary to whom a royalty was paid— received a benefit).[15] But Plaintiff has not and cannot plausibly allege any such thing.

---

[14] As the Security Benefit Defendants point out, there can be no claim for unjust enrichment when there is a contract between the parties that governs the same subject matter. *See* Security Benefit Defs.' Mot. to Dismiss at 19–20 (citing cases). Here, Plaintiff's alleged injuries stem from the annuity contract between Plaintiff and SBL.

[15] The same is true under Alabama law. *See Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*, No. 2:09CV192-MHT, 2011 WL 2893629, at *6 (M.D. Ala. July 19, 2011) ("[T]he plaintiffs' unjust-enrichment claim should be dismissed as to the individual defendants because the plaintiffs did not confer a direct benefit on those individuals.").

Guggenheim Partners is part of the investor group that bought Security Benefit Life in 2010. Am. Compl. ¶ 38. As Plaintiff concedes, Guggenheim Partners and Security Benefit Life are separate and distinct entities. *See id.* ¶ 108. While Plaintiff summarily states that Guggenheim Partners "controls" Security Benefit Life, *id.* ¶ 15, there are no *factual* allegations to support that statement. And, in fact, Guggenheim Partners is not the parent company of Security Benefit Life—SBC is. *See id.* ¶ 14.

While Plaintiff may have paid $145,000 to Security Benefit Life in connection with his purchased annuity, this payment went directly to Security Benefit Life. *See id.* ¶¶ 139, 166; *see also* MJN, Ex. A at 9, ECF No. 35-1 ("All Purchase Payments under this Contract are payable to SBL at One Security Benefit Place, Topeka, Kansas 66636-0001.") There is no allegation that Plaintiff paid any or all of it to Guggenheim Partners, or that his payment went to Security Benefit Life, which then transmitted it directly to Guggenheim Partners. Nor is there any other allegation of a benefit conferred *to* Guggenheim Partners *by* Plaintiff. These facts doom Plaintiff's claim. It is well-established that an unjust enrichment claim is only cognizable against the party upon which the benefit was conferred; even a parent-subsidiary relationship (which does not exist here) would not be enough.

For example, in *Spires v. Hospital Corp. of America*, the Tenth Circuit upheld the dismissal of the plaintiffs' unjust enrichment claim because they failed to allege they "had actually conferred a benefit" on the parent corporation of the subsidiary hospitals where the plaintiffs were allegedly injured, and had "pointed to nothing in Kansas law that supports an indirect unjust enrichment claim against [the parent corporation] for payments made to subsidiary hospitals." 289 F. App'x 269, 273 (10th Cir. 2008). Likewise, in *Regal Ware*, the plaintiff brought an unjust enrichment claim against a parent company, arguing that it conferred

upon the parent company "the benefit of the one million dollar Advance Royalty" that the plaintiff paid to the subsidiary.  653 F. Supp. 2d at 1151.  The court, noting that the parent and subsidiary were distinct corporate entities, made short shrift of the claim, stating that the plaintiff "may not rely solely on [the defendant parent's] parent-subsidiary relationship with the [defendant subsidiary] to allege [the parent's] receipt of the Advance Royalty."  *Id.*  Thus, the court held that the plaintiff "failed to sufficiently allege that it conferred the benefit of the Advance royalty *upon* [the parent]," and dismissed the claim.  *Id.* at 1152 (emphasis added); *see also In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 948 (N.D. Ill. 2009) ("These allegations of 'indirect' purchases, and Defendants['] subsequent alleged 'indirect' enrichment . . . will not support an unjust enrichment claim under . . . Kansas law."), *vacated on other grounds sub nom. Minn-Chem, Inc. v. Agrium Inc.*, 657 F.3d 650 (7th Cir. 2011), *reh'g en banc granted and vacated* (7th Cir. 2011), *and aff'd*, 683 F.3d 845 (7th Cir. 2012).

Plaintiff tries to argue that a much more nebulous, attenuated, and indirect benefit was conferred upon Guggenheim Partners.  His argument appears to be that he paid to Security Benefit Life his purchase payment, which went into Security Benefit Life's reserves and surplus.  *See* Am. Compl. ¶ 166.  According to Plaintiff, Guggenheim Partners then allegedly "depleted Security Benefit Life's reserves and surplus" for its own gain.  *Id.*  Notably, Plaintiff specifically alleges that, "[i]n the mere two years after taking control of Security Benefit Life," Guggenheim Partners had "not only deplet[ed] [SBL's] surplus but erod[ed] [its] reserves, leaving [it] in a negative surplus condition."  *Id.* ¶ 71.  In other words, according to Plaintiff, Guggenheim Partners had already depleted Security Benefit Life's reserves by the time he purchased his annuity in July 2012, making it inherently implausible that Plaintiff's funds ended up with Guggenheim Partners.  Even ignoring that fundamental flaw in Plaintiff's logic, this type of

indirect and attenuated unjust enrichment claim is precisely what the Tenth Circuit has warned against.  *See Spires*, 289 F. App'x at 273; *see also In re Aftermarket Filters Antitrust Litig.*, No. 08-C-4883, 2010 WL 1416259, at *2–3 (N.D. Ill. Apr. 1, 2010) (dismissing an unjust enrichment claim under Kansas law where the plaintiffs only pled that the defendants were "the ultimate end users" of the conferred benefit—not that they actually "conferred a direct benefit on the defendant").

Second, even assuming that such a speculative, indirect, and attenuated "benefit" was a cognizable basis for an unjust enrichment claim, Plaintiff's claim would still fail.  Because the ultimate goal of an unjust enrichment claim "is restoration not penalization," a claim for unjust enrichment may only place a plaintiff "in the same position that they would have been had the defendant not been unjustly enriched."  *Walsh v. Weber*, 379 P.3d 1150, 2016 WL 4750102, at *23 (Kan. Ct. App. 2016).  Here, despite all his conclusory allegations about the financial status of Security Benefit Life, Plaintiff has not alleged that he has not been or cannot be repaid the benefit he allegedly indirectly conferred to Guggenheim Partners, *i.e.*, his purchase payment of $145,000.[16]  Nor could he.  Under his annuity contract with Security Benefit Life, the value of Plaintiff's annuity will always be at least equal to his purchase payment (plus a bonus), meaning Plaintiff is always entitled to be repaid this benefit by Security Benefit Life.  *See* Security Benefit Defs.' Mot. to Dismiss at 5–8, 20–21; Am. Compl. ¶ 34.  Thus, because Plaintiff is guaranteed to be restored "to the position he . . . formerly occupied either by the return of

---

[16] As more fully explained in the Security Benefit Defendants' Motion to Dismiss, in light of the way the annuity contract operates, Plaintiff lacks standing to pursue his claims because he fails to demonstrate any particularized, concrete injury plausibly traceable to Defendants' conduct.  *See* Security Benefit Defs.' Mot. to Dismiss at 5–8, 15–16, 20–21 (discussing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)); *see also* RBS's Mot. to Dismiss at 15–17 (describing Plaintiff's failure to allege a cognizable injury or proximate causation of any such injury).

something he . . . formerly had or the receipt of its equivalent in money," his claim for unjust enrichment must be dismissed.  *Walsh*, 2016 WL 4750102, at *23.  Moreover, to the extent Plaintiff implies that the Guggenheim Defendants were unjustly enriched by the retention of any funds they may have received from Security Benefit Life, *see* Am. Compl. ¶ 41, such an assertion cannot form the basis of a claim of unjust enrichment by *Plaintiff*, who is only entitled to recover the benefit *he* conferred upon the Defendants.

## CONCLUSION

For the reasons stated above, the Guggenheim Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint in its entirety, with prejudice.


August 8, 2018                                    Respectfully submitted,

                                                 LATHROP GAGE LLP

                                    By:     */s/ R. Kent Sellers*
                                            Michael J. Abrams #15407
                                            R. Kent Sellers #70019 (USDC KS)
                                            2345 Grand Boulevard, Suite 2200
                                            Kansas City, MO 64108
                                            Telephone: (816) 292-2000
                                            Facsimile (816) 292-2001
                                            mabrams@lathropgage.com
                                            ksellers@lathropgage.com


                                            WINSTON & STRAWN LLP

                                            Dan K. Webb (*pro hac vice*)
                                            Todd J. Ehlman (*pro hac vice*)
                                            35 West Wacker Drive
                                            Chicago, IL 60601
                                            Telephone: (312) 558-5600
                                            Facsimile: (312) 558-5700
                                            dwebb@winston.com
                                            tehlman@winston.com

Kerry C. Donovan (*pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
kcdonovan@winston.com

*Counsel for Defendants Guggenheim*
*Partners LLC and Guggenheim Partners*
*Investment Management LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2018, I caused the foregoing "Memorandum in Support of Guggenheim Partners' and Guggenheim Investments' Motion to Dismiss the Amended Complaint" to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ R. Kent Sellers*
*An Attorney for Defendants Guggenheim*
*Partners LLC and Guggenheim Partners*
*Investment Management LLC*
